UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND E. PEYTON,<br><br>    Plaintiff,<br><br>v.<br><br>BRIAN CATES,<br><br>    Defendant. | Case No. 1:22-cv-00151-JLT-EPG (PC)<br><br><u>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION BE DISMISSED WITHOUT FURTHER LEAVE TO AMEND</u><br><br>(ECF No. 17)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS |

Plaintiff Raymond E. Peyton is a state prisoner proceeding *pro se* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff brings deliberate-indifference claims concerning the alleged dangers posed to him by COVID protocols and overcrowding at his prison, and an equal-protection claim based on his denial of release from prison or the granting of temporary medical parole. Defendant removed this action to federal court on February 3, 2022. (ECF No. 1). This Court twice ordered Plaintiff to amend his complaint because it failed to comply with Local Rule 220, which requires a complaint to be complete in itself without reference to another filing. (ECF Nos. 7, 12).

Plaintiff filed his third amended complaint on March 24, 2022. (ECF No. 15). On April 7, 2022, the Court screened the third amended complaint and concluded that it failed to state any cognizable claims. (ECF No. 16). The Court gave Plaintiff thirty days to either file an

1

amended complaint or notify the Court in writing that he wanted to stand on his complaint. (*Id.* at 16).

On April 25, 2022, Plaintiff filed a fourth amended complaint. (ECF No. 17). The Court has reviewed the fourth amended complaint, and, for the reasons given below, will recommend that this action be dismissed for failure to state a claim and without further leave to amend. Plaintiff has twenty-one days from the date of service of these findings and recommendations to file his objections.

## I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

## II. SUMMARY OF PLAINTIFF'S FOURTH AMENDED COMPLAINT

Plaintiff names Brian Cates, the Warden of California Correctional Institution (CCI), as the sole Defendant in this case and lists four separate claims.

For his first claim, Plaintiff alleges that his right to be kept free from "the risk of future harm" was violated by Defendant's mishandling of the COVID pandemic at CCI. Defendant, as the Warden, is responsible for medical care and services. And Defendant was delinquent in his response to the COVID pandemic and promulgated and implemented deficient COVID policies. Defendant "exacerbated the medical emergency by transferring ill inmates to CCI Tehachapi" when the State was prohibiting transfers due to the pandemic.[1] "Plaintiff was surrounded by severely ill inmates as the pandemic exploded and CCI-Tehachapi became the second most infected institution in California." The transfer of ill inmates, along with "a lack of medical supplies, properly trained medical and custodial staff, and overcrowded dorms resulted in a continuing threat of serious injury or death to plaintiff who is a senior."

Plaintiff continues "to be incarcerated in dorms filled to maximum capacity of 160 inmates at a time when two new variants are exploding." Plaintiff states that "overcrowding has already resulted in [him] being stricken with COVID for [six] weeks." Plaintiff alleges that Defendant's actions "were deliberately indifferent" in violation of the Eighth Amendment.

For his second claim, Plaintiff asserts that it is a violation of his rights to equal protection under the law to keep a person of his age (a senior), who is at "higher risk," subject to the living conditions described in his first claim. Defendant is violating this right by refusing "to allow Plaintiff to have temporary medical parole."

For his third claim, Plaintiff argues that Defendant is not entitled to immunity because he acted in excess of his discretion by transferring inmates when the State banned such transfers.

For his fourth claim, Plaintiff states that ongoing overcrowding violates his Eighth Amendment rights. He asserts that he has suffered three attacks at various prisons and constant

---

[1] Minor alterations, such as changing punctuation and capitalization, have been made to quoted portions of Plaintiff's complaint without indicating the changes.

3

threats "if he fails to show his paperwork." And overcrowding has resulted in the loss of the "special/sensitive needs yards" in California prisons, which increases the risk of future harm to Plaintiff who is a sex offender. Defendant is failing "to keep the vulnerable separate in a display of deliberate indifference." New cameras are being installed to monitor the violence as the old cameras did not work or were not monitored.

As for relief, Plaintiff seeks either release from prison for his "unauthorized" sentence or temporary medical parole. He also seeks monetary damages.

### III.     ANALYSIS OF PLAINTIFF'S COMPLAINT

#### A.  Section 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. County of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th

Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are not liable under § 1983 for the actions of their employees under a theory of *respondeat superior*; therefore, when a named defendant holds a supervisory position, the causal link between the supervisory defendant and the claimed constitutional violation must be specifically alleged. *Iqbal*, 556 U.S. at 676-77; *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under § 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either: were personally involved in the alleged deprivation of constitutional rights, *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent them," *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation," *Hansen*, 885 F.2d at 646 (citations and internal quotation marks omitted).

For instance, a supervisor may be liable for his or her "own culpable action or inaction in the training, supervision, or control of his [or her] subordinates," "his [or her] acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a

reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).

### B. Conditions of Confinement

Plaintiff's first claim concerning COVID protocols at his prison (including allegations of overcrowding) and his fourth claim alleging overcrowding both implicate his conditions of confinement under the Eighth Amendment. "It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006); *Osolinski v. Kane*, 92 F.3d 934, 937 (9th Cir. 1996); *Jordan v. Gardner*, 986 F.2d 1521, 1531 (9th Cir. 1993) (*en banc*). Prison officials must, however, provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995); *see also Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982); *Wright v. Rushen*, 642 F.2d 1129, 1132-33 (9th Cir. 1981).

Two requirements, one objective and one subjective, must be met to show an Eighth Amendment violation. *Farmer*, 511 U.S. at 834. "First, the deprivation alleged must be, objectively, sufficiently serious." *Id.* (citation and internal quotation marks omitted). Second, "a prison official must have a sufficiently culpable state of mind," which for conditions of confinement claims "is one of deliberate indifference." *Id.* (citations and internal quotation marks omitted). Prison officials act with deliberate indifference when they subjectively know of and disregard an excessive risk to inmate health or safety. *Id.* at 837. The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2006). Mere negligence on the part of a prison official is not sufficient to establish liability, but rather, the official's conduct must have been

wanton. *Farmer*, 511 U.S. at 835; *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

### 1. COVID protocols

Plaintiff alleges in his first claim that Defendant failed to protect him from "the risk of future harm" by implementing deficient COVID policies. Specifically, Plaintiff faults Defendant for transferring ill inmates to CCI and for the lack of medical supplies and properly trained staff.[2]

In addressing similar allegations implicating a prisoner's conditions of confinement during the COVID pandemic, several district courts have concluded that COVID can pose a substantial risk of serious harm. *Johnston v. CDCR Health Care*, No. 1:21-cv-01322-NONE-BAM (PC), 2021 WL 5921461, at *5 (E.D. Cal. Dec. 15, 2021)*, report and recommendation adopted*, 2022 WL 183432 (collecting cases concluding that COVID presents a substantial risk of serious harm to prisoners). However, to state a conditions-of-confinement claim, a plaintiff must present specific allegations as to how COVID conditions at the prison personally placed the plaintiff at risk. For example, it is not enough for a plaintiff to simply allege that prison officials failed to follow CDC guidance or prison policy and that he contracted COVID as a result. *Benitez v. Sierra Conservation Ctr., Warden*, No. 1:21-cv-00370-BAM, 2021 WL 4077960, at *5 (E.D. Cal. Sept. 8, 2021), *report and recommendation adopted*, 2021 WL 4593841 (E.D. Cal. Oct. 6, 2021) ("However, in order to state a cognizable Eighth Amendment claim against the warden and the Health Executive Officer, Plaintiff must provide more than generalized allegations that the warden and the Health Executive Officer have not done enough regarding control the spread.").

Notably, CDC guidance and prison policy are not alone determinative of constitutional requirements. *Sanford v. Eaton*, No. 1:20-cv-00792-NONE-BAM 2022 WL 168530, at *2 (E.D. Cal. Jan. 19, 2022) (noting that failure to follow CDC guidelines does not necessarily state a constitutional claim). As the Ninth Circuit has observed in the context of addressing the COVID pandemic as to Immigration and Customs Enforcement (ICE) detainees, the legitimate

---

[2] Plaintiff also alleges overcrowding within his first claim. This allegation is addressed collectively with Plaintiff's fourth claim, which also alleges overcrowding.

governmental objectives associated with detention may make strict adherence to COVID guidelines unfeasible. *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 640 (9th Cir. 2021) (concluding that detainees' allegations concerning social distancing did not "thereby demonstrate ICE's deliberate indifference to the risks of COVID-19" because "[t]here are understandable constraints in imposing social distancing measures in a detention facility consistent with other necessary governmental objectives, such as security and the need to place certain persons in custody"); *see Plata v. Newsom*, No. 21-16696, 2022 WL 1210694, at *2 (9th Cir. Apr. 25, 2022) (unpublished) ("A decision to adopt an approach that is not the most medically efficacious does not itself establish deliberate indifference.").

Although CDC guidance and prison policy are not determinative of whether an Eighth Amendment violation has occurred, they remain a relevant benchmark to assess a prison official's efforts to combat COVID. *See Ahlman v. Barnes*, 445 F. Supp. 3d 671, 691 (C.D. Cal. 2020) ("The suggestions laid out in the CDC Guidelines represent expert medical advice regarding measures needed to limit the spread of COVID-19."). Accordingly, a prison official's failure to follow measures recognized to prevent the spread of COVID can demonstrate "deliberate indifference toward the health and safety of the inmates." *Id.* In assessing a conditions-of-confinement claim alleging a failure to implement appropriate measures in a prison to combat COVID, the "key inquiry is not whether [the] [d]efendant perfectly responded, complied with every CDC guideline, or whether the efforts ultimately averted the risk; instead, the key inquiry is whether [the] [d]efendant responded reasonably to the risk." *Martinez v. Sherman*, No. 1:21-cv-01319-BAM, 2022 WL 126054, at *6 (E.D. Cal. Jan. 13, 2022) (internal citation omitted).

While the case law in the area is still developing, courts have found no Eighth Amendment violation where prison officials reasonably implement policies, recognized to combat COVID, in light of the penological needs associated with incarceration. *See Plata*, 2022 WL 1210694, at *2 (concluding that CDCR policy, which did not require all prison workers to become vaccinated, did not rise to deliberate indifference in light of other precautions implemented and the deference due to balancing prison administrative concerns); *Davis v.*

8

*Allison*, No. 1:21-CV-00494-HBK, 2021 WL 3761216, at *4 (E.D. Cal. Aug. 25, 2021), *report and recommendation adopted*, 2021 WL 4262400 (E.D. Cal. Sept. 20, 2021) (finding that the plaintiff failed to meet the subjective prong where prison had implemented some COVID protocols consistent with CDC guidelines).

Applying this framework here, the Court begins with the objective prong of a conditions-of-confinement claim, considering whether the deprivation alleged here was sufficiently serious. Although COVID may pose a serious risk to prisoners, Plaintiff fails, as the Court specifically directed him to do in the screening order, to sufficiently allege that he personally was at risk of serious harm. *See Johnston*, 2021 WL 5921461, at *5 (concluding that a plaintiff "failed to satisfy the objective prong" of a conditions-of-confinement claim where the plaintiff failed to link his contracting of COVID with "any individual [that] had COVID 19 with whom Plaintiff was in contact or that any circumstance was an extreme deprivation").

While Plaintiff states that ill inmates were brought to his prison when no transfers were set to take place, resulting in the second highest outbreak in California at his institution, he does not, as the Court noted in its screening order, provide sufficient facts to conclude that this personally placed him at risk. Notably, Plaintiff fails to offer specific facts to support his allegation that he "was surrounded by severely ill inmates" (ECF No. 17, p. 3), such as that he was housed with ill inmates, that he was forced to be physically near the ill inmates elsewhere in the prison, or that he contracted COVID as a result of the ill inmates being transferred to his prison.[3] Moreover, Plaintiff fails to identify any policy that Defendant enacted that required him to be "surrounded" by ill inmates. *See Sanford*, 2022 WL 168530, at *3 ("Though Plaintiff attributes every perceived failure to address the COVID-19 pandemic to Cates and Schuyler, he fails to allege facts to support these conclusions."). Considering the Court's prior instruction to "describe Defendant's specific acts or omissions in responding to the COVID pandemic and explain why those acts or omissions show that Defendant deliberately disregarded a serious risk

---

[3] The Court recognizes that elsewhere in the fourth amended complaint, Plaintiff alleges that he is continuing to be incarcerated in dorms filled to maximum capacity and "[s]aid overcrowding has already resulted in [him] being stricken with COVID for [six] weeks." The Court addresses these allegations below along with claim four.

of harm" (ECF No. 16, p. 10), Plaintiff was on notice that allegations more specific than being "surrounded" by ill inmates are required to state a claim  Likewise, Plaintiff does not allege facts demonstrating that any lack of medical supplies or properly trained staff ever personally subjected him to risk of serious harm, even though the Court notified him of a similar deficiency in his prior complaint. *See Sanford*, 2022 WL 168530, at *2 ("Plaintiff must rely on more than [prison officials] non-compliance with either CDC or CDCR policies; he must also establish that their response was unconstitutional.").

Additionally, Plaintiff fails to allege sufficient facts to satisfy the subjective prong—that Defendant acted with deliberate indifference by disregarding a serious risk to his health or safety. Although the complaint generally alleges that Defendant implemented "deficient policies," Plaintiff fails to specify any COVID policy that was deficient, what policy should have been implemented, and how the failure to follow a policy led to a constitutional violation. *See McKissick v. Gastelo*, No. 2:21-cv-01945-VAP, 2021 WL 2895679, at *5 (C.D. Cal. July 9, 2021) ("However, to state a cognizable Eighth Amendment claim, Plaintiff must provide more than generalized allegations that Defendants have not done enough to enforce six-feet social and living distancing, or provided sufficient cleaning supplies, in order to control the spread of COVID-19."). For example, although Plaintiff complains about the lack of medical supplies, he fails to describe what policy Defendant had regarding medical supplies and how any such policy demonstrates that Defendant acted with deliberate indifference to his health or safety.

Likewise, Plaintiff's generalized allegations that Defendant, as the head of the prison, should have better responded to the COVID pandemic are insufficient to show that Defendant knew of and disregarded an excessive risk to Plaintiff's health. *See Martinez*, 2022 WL 126054, at *6 (concluding that the plaintiff failed to state a conditions-of-confinement claim where the plaintiff "fail[ed] to attribute any specific conduct to Defendant, other than that he was the warden and responsible for all actions"); *Blackwell v. Covello*, No. 2:20-cv-1755 DB P, 2021 WL 915670, at *3 (E.D. Cal. Mar. 10, 2021) ("However, in order to state a cognizable Eighth Amendment claim against the warden plaintiff must provide more than generalized allegations that the warden has not done enough to control the spread.").

### 2. Overcrowding

Plaintiff also alleges overcrowding within his first claim and asserts a separate Eighth Amendment violation in his fourth claim based on additional overcrowding allegations. Specifically, Plaintiff asserts that (1) he is currently incarcerated "in dorms filled to maximum capacity of 160 inmates," which "overcrowding has already resulted in Plaintiff being stricken with COVID for [six] weeks," (2) he "has suffered [three] attacks at various prisons [and] constant threats at CCI Tehachapi if he fails to show his paperwork," and (3) the special needs yards in California prisons have been eliminated.

As an initial matter, mere allegations of overcrowding fail to state a constitutional violation. *Doty v. Cty. of Lassen*, 37 F.3d 540, 545 (9th Cir. 1994) ("While overcrowding itself is not a violation of the Eighth Amendment, overcrowding can, under certain circumstances, cause effects, e.g., unsanitary conditions or high levels of violence, that violate the Eighth Amendment."). Instead, a claim for overcrowding is only cognizable when the crowding results in conditions that violate constitutional rights, such as an increase in prison violence, reduced provision of constitutionally required services, or unfit conditions for human habitation. *See Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 471 (9th Cir. 1989) (noting that overcrowding giving rise to violence or inadequate staffing could give rise to Eighth Amendment violation); *Brown v. Plata*, 563 U.S. 493, 502 (2011) (addressing overcrowding resulting in diminished mental health and medical care).

Keeping these standards in mind, Plaintiff fails to state an Eighth Amendment conditions-of-confinement-claim due to overcrowding. Although the Court's screening order advised Plaintiff to do so, Plaintiff once again fails to allege specific facts to show that there is overcrowding in his prison, nor does he explain how Defendant is responsible.[4] For example, the allegation that Plaintiff is housed in a dorm at max capacity does not, without more, provide

---

[4] Plaintiff states that he "provided this Court with CDCR figures as well as news articles demonstrating the on-going nature of the overcrowding systemwide." (ECF No. 17, p. 5). This appears to be a reference to documents provided along with Plaintiff's initial complaint. (*See* ECF No. 1, p. 338). However, as the Court has instructed Plaintiff three times before, any amended complaint supersedes earlier complaints. (ECF No. 7, p 2; ECF No. 12, p. 4 n.1; ECF No. 16, p. 16). Accordingly, the Court will not look to earlier complaints in support of Plaintiff's overcrowding allegations.

a sufficient basis to conclude that the dorm is actually overcrowded, that this housing arrangement led to his contracting COVID, or that Defendant promulgated a policy resulting in overcrowding. Likewise, Plaintiff's assertion that he has suffered three attacks at various prisons does not support the conclusion that the attacks were caused by overcrowding or that Defendant, the Warden at CCI, was somehow responsible for attacks which occurred at multiple prisons. Further, Plaintiff's allegation that he is subject to an increased risk of violence as a sex offender because of the elimination of the special needs yards is unsupported with any facts showing that Defendant is responsible for the State-wide elimination of the special needs yards, nor does Plaintiff provided any developed allegation that he is at risk of violence due to some specific act or omission by Defendant.

Additionally, the Court notes that, in connection with Plaintiff's overcrowding allegations, he argues that overcrowding renders his sentence "unauthorized" and entitles him to release from prison. In the screening order, the Court noted that it was unclear why Plaintiff believed his sentence to be "unauthorized," but observed that some prisoners have used this term in § 1983 suits in an effort to challenge their criminal convictions. *See, e.g.*, *Newsome v. Gill*, No. 3:18-cv-01938-JLS-JMA, 2018 WL 5809511, at *2 (S.D. Cal. Nov. 6, 2018) (rejecting challenge to "unauthorized" sentence as improperly brought in § 1983 suit). The Court advised Plaintiff that, to the extent that he intended to challenge the fact or duration of his sentence, he must file a writ of habeas corpus. *See Nettles v. Grounds*, 830 F.3d 922, 927-30 (9th Cir. 2016) (describing how "state prisoner claims that lie at the core of habeas (and is the exclusive remedy for such claims)" are claims where "success in that action would necessarily demonstrate the invalidity of confinement or its duration").

In an apparent effort to clarify what Plaintiff means by asserting that his sentence is "unauthorized," he states that he seeks release under *Brown v. Plata*, where the Supreme Court affirmed a lower court's decision to require the California state prison system to reduce overcrowding due to resulting Eighth Amendment violations. 563 U.S. at 545. However, as the Court previously advised Plaintiff, "a remedial court order, standing alone, cannot serve as the basis for liability under 42 U.S.C. § 1983 because such orders do not create rights, privileges or

immunities secured by the Constitution and laws of the United States. Thus, *Plata* by itself does not provide any substantive right on which plaintiff can rely . . . ." *Thomas v. Alameda County*, 2015 WL 1201290, at *3 (N.D. Cal. Mar. 16, 2015) (citation and internal quotation marks omitted). *See also Peyton v.* Brown, 584 F. App'x 603, 604 (9th Cir. 2014) ("[T]he decision in *Brown v. Plata*[], requiring the State of California to reduce prison overcrowding to improve mental health and medical services to inmates, does not give [Plaintiff] cognizable claims for immediate or temporary supervised release merely because he also alleges deprivations arising from prison overcrowding.").

Moreover, although Plaintiff characterizes his request for release as being brought under § 1983, he cites caselaw indicating that his request lies within habeas. Specifically, Plaintiff cites *People v. Scott*, in which the California Supreme Court discussed "unauthorized sentences" in terms of a criminal defendant's challenge to whether he could waive appellate review of a sentencing issue. 9 Cal. 4th 331, 354 (1994), *as modified on denial of reh'g* (Mar. 14, 1995). Rather than support Plaintiff's argument that his request falls under § 1983, this case undermines it. Notably, a challenge to Plaintiff's criminal sentence, like the one in *People v. Scott*, would necessarily result in the invalidity of the duration of Plaintiff's confinement. Thus, to the extent that Plaintiff intends to do so, he must bring such a challenge through a writ of habeas corpus.[5]

Additionally, while not specified in the complaint, it appears that Plaintiff may be seeking a prisoner release order. Requests for prospective relief are limited by 18 U.S.C. § 3626(a)(1)(A) of the Prison Litigation Reform Act (PLRA), which requires that the Court find that the "relief [sought] is narrowly drawn, extends no further than necessary to correct the violation of the Federal Right, and is the least intrusive means necessary to correct the violation of the Federal Right." As to requests for a release order, the PLRA provides:

> (3) Prisoner release order.--(A) In any civil action with respect to prison conditions, no court shall enter a prisoner release order unless--

---

[5] Petitions for writ of habeas corpus are subject to limitations and the Court is not holding that such a procedure is available to Plaintiff. Additionally, the Court notes that Plaintiff states that he already filed a habeas petition in 2014.

    (i) a court has previously entered an order for less intrusive relief that has failed to remedy the deprivation of the Federal right sought to be remedied through the prisoner release order; and

    (ii) the defendant has had a reasonable amount of time to comply with the previous court orders.

  (B) In any civil action in Federal court with respect to prison conditions, a prisoner release order shall be entered only by a three-judge court in accordance with section 2284 of title 28, if the requirements of subparagraph (E) have been met.

  (C) A party seeking a prisoner release order in Federal court shall file with any request for such relief, a request for a three-judge court and materials sufficient to demonstrate that the requirements of subparagraph (A) have been met.

  (D) If the requirements under subparagraph (A) have been met, a Federal judge before whom a civil action with respect to prison conditions is pending who believes that a prison release order should be considered may sua sponte request the convening of a three-judge court to determine whether a prisoner release order should be entered.

  (E) The three-judge court shall enter a prisoner release order only if the court finds by clear and convincing evidence that--

    (i) crowding is the primary cause of the violation of a Federal right; and

    (ii) no other relief will remedy the violation of the Federal right.

  (F) Any State or local official including a legislator or unit of government whose jurisdiction or function includes the appropriation of funds for the construction, operation, or maintenance of prison facilities, or the prosecution or custody of persons who may be released from, or not admitted to, a prison as a result of a prisoner release order shall have standing to oppose the imposition or continuation in effect of such relief and to seek termination of such relief, and shall have the right to intervene in any proceeding relating to such relief.

18 U.S.C. § 3626(a)(3).

  Here, Plaintiff has not submitted materials showing, or even sufficiently alleged, that a court previously entered an order for less intrusive relief that failed to remedy the deprivation of the federal right sought to be remedied through a release order.

### C. Fourteenth Amendment Equal Protection

  Plaintiff's second claim alleges that it is a denial of his right to equal protection under the law to keep a person of his age (a senior), who is at "higher risk," subject to the living

1 conditions described in his first claim. He states that Defendant is responsible for this violation
2 because Defendant refuses to agree to release Plaintiff to temporary medical parole.

3 The equal protection clause requires that persons who are similarly situated be treated
4 alike. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985); *Hartmann v.*
5 *California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013); *Furnace v. Sullivan*,
6 705 F.3d 1021, 1030 (9th Cir. 2013); *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008). To
7 state a claim, Plaintiff must show that Defendants intentionally discriminated against him based
8 on his membership in a protected class, *Hartmann*, 707 F.3d at 1123 *Furnace*, 705 F.3d at
9 1030, *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003), *Thornton v. City of St. Helens*,
10 425 F.3d 1158, 1166-67 (9th Cir. 2005), *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir.
11 2001), or that similarly situated individuals were intentionally treated differently without a
12 rational relationship to a legitimate state purpose, *Engquist v. Oregon Department of Agr.*, 553
13 U.S. 591, 601-02 (2008), *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), *Lazy Y*
14 *Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008), *North Pacifica LLC v. City of*
15 *Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008).

16 Plaintiff's allegations are not sufficient to state an equal-protection claim. Plaintiff has
17 not alleged facts demonstrating that he was intentionally discriminated on the basis of his
18 membership in a protected class or that he was intentionally treated differently than other
19 similarly situated inmates without a legitimate state purpose. As an initial matter, "age is not a
20 suspect classification under the Equal Protection Clause." *Kimel v. Fla. Bd. of Regents*, 528
21 U.S. 62, 83 (2000). Moreover, Plaintiff does not actually allege any difference in treatment
22 between himself and younger inmates, such as younger inmates being granted temporary
23 medical parole. Rather, Plaintiff's claim amounts to a request that he be treated more favorably
24 than younger inmates based on being a senior, asserting that this status entitles him to
25 temporary medical parole.

26 Additionally, Plaintiff fails to explain, what role, if any, Defendant had regarding his
27 requests for temporary medical release. Rather, as the Court previously advised Plaintiff, under
28 California's penal code, medical parole is governed by § 3550. This statute permits medical

15

parole based on permanent medical incapacity, not merely upon age, and leaves it to the Board of Parole Hearings, not the Warden, to grant medical parole if the Board "determines that the conditions under which [a prisoner] would be released would not reasonably pose a threat to public safety."[6] § 3550(a).

### D. Immunity

Plaintiff's third claim asserts that Defendant is not entitled to immunity. However, immunity is not a claim for a constitutional violation, but is a defense to one. *See Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001) ("Qualified immunity is an affirmative defense that must be raised by a defendant."). Thus, there is no actual claim for the Court to address.

## IV. CONCLUSION AND RECOMMENDATIONS

The Court concludes that Plaintiff's fourth amended complaint fails to state any cognizable claims. The Court will recommend that this action be dismissed without granting Plaintiff further leave to amend. In the Court's prior screening order, the Court identified the deficiencies in Plaintiff's complaint, provided Plaintiff with relevant legal standards, and provided Plaintiff with an opportunity to amend his complaint. Plaintiff filed his fourth amended complaint with the benefit of this information but failed to cure the deficiencies identified in the screening order. Thus, it appears that further leave to amend would be futile.

Accordingly, IT IS RECOMMENDED as follows:

1. Plaintiff's fourth amended complaint be dismissed for failure to state a claim and without further leave to amend, and

2. The Clerk of Court be directed to close this case.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to

---

[6] Plaintiff summarily asserts that § 3550 is "moot" because temporary medical parole is available under prison regulations. He does not city any specific regulation; however, Cal. Code Regs. tit. 15, § 3359.1(a) specifies the procedures for granting medical parole, and notes that these procedures are implemented "[p]ursuant to Penal Code section 3550."

Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 5, 2022**               /s/ Erica P. Grosjean
                                        UNITED STATES MAGISTRATE JUDGE